16356

STATE v. PARLER

(59 S. E. (2d) 489)

*Messrs. Hydrick & Hydrick,* of Orangeburg, *for Appellant,*

*Mr. Julian S. Wolfe, Solicitor,* of Orangeburg, *for Respondent,*

May 11, 1950.

FISHBURNE, Justice.

Under an indictment charging him with assault and battery with intent to kill and murder one, Clarence Felder, with a deadly weapon on January 1, 1949, the appellant was put upon trial in the Orangeburg County Criminal Court, and by verdict of the jury was found guilty of assault and battery of a high and aggravated nature. He was sentenced to serve two years upon the public works of Orangeburg County or a like period in the State Penitentiary.

At the close of the testimony offered by the State, the appellant moved for the direction of a verdict on the ground that the only reasonable inference to be drawn from the evidence was that he acted in self defense and in defense of his habitation and family. Following the verdict, a motion was made by appellant for a new trial upon the same ground as was stated in his motion for a directed verdict.

The motion for a directed verdict in his favor should have been made by appellant at the close of all the evidence,—that offered by the State and that offered by the Defense,—as required by Rule 76 of the Circuit Court. *State v. O'Shields,* 163 S. C. 408, 161 S. E. 692; *State v. Ray,* 147 S. C. 329, 145 S. E. 192. However, as the conviction and sentence involve the liberty of the appellant, this Court in accord with its liberal policy under such circumstances, waives his failure to comply with the Rule, and will consider the question on its merits. *State v. Lyles,* 211 S. C. 334, 45 S. E. (2d) 181; *State v. Stevens,* 116 S. C. 210, 107 S. E. 906.

The appellant, Jaygo Parler, and the prosecuting witness, Clarence Felder, both of whom are negroes, resided and worked on the same plantation in Orangeburg County; they and their families lived about a half mile apart. Appellant admits that he shot Felder in the left side of his body, with a shotgun, a little after dark on New Year's Day, January 1, 1949; but he seeks to excuse and justify the shooting on the ground of self defense, and that he acted in defense of his home and family. It is likewise admitted that prior to the altercation which occurred between these parties, they and their families were on cordial terms, and had been friends for years.

The testimony of the State tends to show that on the morning of January 1st, the appellant went to the home of Felder, where much drinking of liquor was indulged in. He stayed at Felder's home until about two o'clock in the afternoon, after which they parted, and Felder went to feed and attend to the stock on the farm. After discharging these duties, he went to the home of appellant. The evidence is conflicting as to what occurred at appellant's home immediately preceding the shooting. Felder says that he visited appellant late in the afternoon, and while in his home they drank some wine. Shortly after dark, he got up to leave for his own home. When he was leaving by way of appellant's back yard, Parler asked Felder to lend him $5.00; and stated that if the loan was made, he would return it the next day. Felder told him that he did not have the money, and proceeded on his way toward the garden and the fowl house. This denial of the loan led to a warm interchange between them of accusation and recrimination, as a result of which appellant shot Felder.

Deputy Sheriffs Gaskin and Collins made an investigation of the affair, and of the premises, the morning after the shooting. Gaskin stated that there was blood between the back door and the fowl house. This was corroborated by Collins, who stated that there was blood about twenty-five

feet from the back steps of appellant's home,—between the back part of the house and the fowl house. Collins further stated that both Felder and Parler had been drinking, and that the appellant was pretty well intoxicated the night of the shooting when he arrested him and placed him in jail.

Appellant in his testimony admitted that on the morning of January 1st he went to the home of Felder, and that earlier that morning he had drunk one bottle of beer, but did not take another drink of any kind during the entire day. He gave this account of the difficulty between him and Felder: He said that late that afternoon he approached his house and saw Felder standing at the front door. When he asked Felder what he wanted, Felder replied that he wanted to see appellant's wife. He was ordered to leave by appellant, who said that he laid his hand on Felder's shoulder. They wrestled and fell out of the door together, after which, at Felder's request, they walked down the road a short distance, Appellant says he saw a knife in Felder's hand, so he returned to his own home. He does not say that Felder made any attack upon him.

About ten minutes after Parler's return home from this walk, he heard someone cough outside of his house, by the chimney. At that time he and his wife and children were in the house. When he heard the cough he went outside with his gun, and saw Felder standing by a window near the chimney. He asked Felder what he was doing there, whereupon Felder, according to appellant, came on him with the knife, and appellant backed off. Then Felder said: "Damn you, I am going to go in the house;" and when he turned toward the house, appellant shot him.

As already stated, appellant attempts to justify his action on the ground of self defense and the protection of his home and family. He denied that any conversation took place between him and Felder concerning a loan of $5.00.

The deputy sheriffs who testified, found boot tracks around the house of appellant and at the chimney corner,

where appellant says he found Felder; and there was testimony that Felder was wearing boots that day. Boot tracks were found near the back entrance to the house.

Felder in his testimony admitted that he had a small pocket knife, and was trimming his fingernails when he was shot. He denied that he was at the side of the house near the chimney corner, but asserted that he was between the garden and the fowl house when he was shot. He denied that he made any attack whatever on appellant with the knife or otherwise, and denied time and again that appellant ordered him to leave his house and premises. Felder denied that he stated to appellant that he intended to enter the house, or that he intended in any way to molest appellant's wife.

As a result of the wound inflicted upon him, Felder remained in an Orangeburg hospital for more than two months.

No exception has been taken to the instructions given by the judge of the County Court to the jury. In fact, the charge given by the court is not included in the transcript of record. But we assume that it was full, fair, and impartial, and covered the issues raised by the evidence, including the law applicable to self defense and the defense of habitation and family.

The only question raised by this appeal is whether the Court erred in failing to direct a verdict, or granting a new trial in favor of the appellant on the ground that the only reasonable inference to be drawn from the evidence is that the defendant acted in self defense and in defense of his home and family.

It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury and evidence which raises only a suspicion or possibility of the fact in issue. But, viewing the evidence, and the inferences which may reasonably be drawn therefrom, in its most favorable light for the State, which is the accepted position on a motion to direct a verdict,—*State v. Turner,* 117 S. C.

470, 109 S. E. 119; *State v. Quinn,* 111 S. C. 174, 97 S. E. 62, 3 A. L. R. 1500,—we are of the opinion that it is of sufficient probative value to warrant its submission to the jury.

As was stated in *State v. Brown,* 205 S. C. 514, 32 S. E. (2d) 825, 827; "The office and function of the Court when considering a motion for a directed verdict in favor of the defendant, is, not to pass upon the weight of the evidence, but to determine its sufficiency to support the verdict. Where there is any evidence, however slight, on which the jury may justifiably find the existence or the non-existence of material facts in issue, or if the evidence is of such character that different conclusions as to such facts reasonably may be drawn therefrom, the issues should be submitted to the jury. *State v. Prince,* 165 S. C. 115, 162 S. E. 777; *State v. Gellis,* 158 S. C. 471, 155 S. E. 849; *State v. Rush,* 129 S. C. 43, 123 S. E. 765."

The evidence in this case, as in most cases, is conflicting. It is not within our province to weigh the testimony or to pass upon the credibility of the witnesses. If the jury believed, as they evidently did, the testimony offered by the State, they were justified in rendering a verdict of guilty. And we hold that there was sufficient evidence upon which this verdict could be based. The judgment must, therefore stand affirmed.

Judgment affirmed.

STUKES, TAYLOR and OXNER, JJ., and A. L. GASTON, A.A.J., concur.

BAKER, C. J., not participating.