504 S.E.2d 124

**The STATE, Respondent,**

v.

**William Hodges ADAMS, Appellant.**

**No. 2854.**

Court of Appeals of South Carolina.

Heard June 2, 1998.
Decided June 15, 1998.

Senior Assistant Appellate Defender Wanda H. Haile, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor W. Townes Jones, IV, Greenwood, for respondent.

GOOLSBY, Judge:

William Adams was convicted of attempted lewd act on a minor, assault with intent to commit criminal sexual conduct, and assault and battery of a high and aggravated nature. The trial court sentenced Adams to concurrent terms of imprisonment of ten years for the attempted lewd act, eighteen years for assault with intent to commit CSC, and ten years for ABHAN. Adams appeals. We affirm.

The charges against Adams concern the alleged sexual abuse of his stepdaughter ("Victim"). In May 1995, Victim disclosed to her doctor that she had been sexually molested by her stepfather over the course of eight years from the time she was ten years old. Adams had married Victim's mother in 1983, and the first molestation occurred less than two years later. At trial, the State was allowed to present the testimony of Victim's sister ("Sister"), who testified that Adams had abused her at least once a week for eight years. Sister was nine years old when Adams first approached her. Sister disclosed the molestation when Victim came forward.

## I. *Lyle* Evidence

■ Adams first argues the trial court erred in admitting other-bad-act evidence under a *Lyle* common-plan-or-scheme exception. He asserts that "there was nothing more than a general similarity between the prior bad acts" and that "there was no clear and convincing proof of" the other bad acts.

■ Evidence is inadmissible to show propensity to commit a crime. Rule 404(b), SCRE. Evidence is admissible, however, "if it tends to show common scheme or plan and its close similarity to the charged offense enhances its probative value so as to outweigh its prejudicial effect." *State v. Blanton*, 316 S.C. 31, 32, 446 S.E.2d 438, 439 (Ct.App.1994).

In *Blanton*, this court affirmed the trial court's admission of evidence of prior bad acts of the defendant, who was charged with CSC with a minor. There, three female victims testified that they were approximately the same age when the defendant had sexually abused them; "[e]ach was subjected to requests both for the performance of cunnilingus and fellatio[;] [a]ll of the alleged activities took place in [the defendant's] house or his vehicle[;] ... [and the defendant] took advantage of his relationship with the victim for his sexual gratification." *Id.* at 33, 446 S.E.2d at 439. The court held the "acts were sufficiently similar to the charged offense to be admissible." *Id.*

Likewise, in *State v. McClellan*, 283 S.C. 389, 323 S.E.2d 772 (1984), the supreme court affirmed the admission of testimony of sisters against their father. There, the attacks occurred on each girl when they were around the age of

twelve, the defendant entered the sisters' room at night, he gave to each the same explanation for his actions, and he quoted Bible verses to each girl. *Id.*

In *State v. Hallman*, 298 S.C. 172, 379 S.E.2d 115 (1989), our supreme court again upheld the admission of prior bad acts against a defendant who abused several children. There, a foster parent abused foster children in his care. The court noted that the following similarities were sufficient to prove common scheme or plan: the children were similar in age when the foster father abused them; the defendant took advantage of his relationship with the girls for his own sexual gratification; the abuse commenced in exactly the same manner, by rubbing the victim's body outside her clothing, and under similar circumstances, usually in the barn or while riding on a tractor; and the abuse increased in frequency during the summer. *Id.*

Adams's first attack on Victim occurred in a hammock, and later attacks frequently occurred when Victim traveled with Adams in his truck. Adams would rub Victim's genitals and place her hand on his genitals. Adams also asked Victim to watch a pornographic video with him, but she refused. Adams would pick the lock to Victim's bedroom to watch her change clothes. Once Adams picked the lock to the bathroom when Victim was showering and ripped the shower curtain aside. Adams repeatedly harassed Victim by asking her when they were going to have sex. Victim failed to report the abuse because Adams told her, "If you ever tell anybody ... you'll go down with me."

The first incident of abuse with Sister occurred when Adams called her to the hammock and asked her to touch his genitals. When she refused, he placed her hand on his genitals. Sister testified that Adams also molested her in his truck. Sister, too, testified that Adams had entered her bedroom while she was changing clothes and the bathroom while she was showering. Adams also asked Sister to watch a pornographic movie, and she refused. Sister testified that she did not reveal the abuse because Adams told her "if he was to go down, that I would go down with him."

As the supreme court stated in *McClellan*, "It would be difficult to conceive of a common scheme or plan more within

the plain meaning of the exception than that presented by this evidence." *McClellan*, 283 S.C. at 392, 323 S.E.2d at 774. Here, Adams used his relationship as stepfather to control the girls; the girls were approximately the same age; the attacks began in the back-yard hammock; both girls were molested in Adams's truck; both girls were forced to place their hands on Adams's genitals while in his truck; Adams picked locks to both girls' bedrooms to watch them change clothes; Adams entered the bathroom while both girls were showering and pulled the shower curtain aside while they were bathing; Adams offered to show both girls a pornographic videotape; Adams repeatedly asked both girls when they could have sex; and, to control both girls from disclosing his abuse, Adams threatened both girls with the same line: "If you tell, you'll go down with me."

These specific similarities [1] are sufficient so that proof of one tended to prove the other. The evidence tended to show a common scheme or plan, "and its close similarity to the charged offense enhances its probative value so as to outweigh its prejudicial effect." *Hallman*, 298 S.C. at 174, 379 S.E.2d at 116.[2]

■ Adams further argues that Sister's allegations were not proven by clear and convincing evidence. Corroboration of a victim's testimony is not required in sexual assault prosecutions. S.C.Code Ann. § 16–3–657 (1985). Sister iden-

---

1. Adams, himself, argued before the jury that the allegations tracked "almost identical abuse over eight or nine years."

2. We find distinguishable the supreme court's recent decision in *State v. Nelson*, Op. No. 24778, 331 S.C. 1, 501 S.E.2d 716 (1998). In *Nelson*, the trial court admitted the evidence as probative of a "personality characteristic," namely, that the defendant was a pedophile. Our supreme court reversed the trial court because "[s]uch evidence could only invite the jury to infer Petitioner was acting in conformity with this character trait when he committed the crimes with which he was charged." *Id.* at 7, 501 S.E.2d at 719. The court further found that "the State's argument [that] th[e] evidence was relevant to show motive or intent [wa]s merely a cleverly disguised way of asserting Petitioner committed the crimes because he has a propensity to commit sexual offenses." *Id.* at 12, 501 S.E.2d at 722. Here, the evidence clearly falls within the common-scheme-or-plan exception of Rule 404(b), SCRE, and parallels other South Carolina cases involving sexual abuse of children.

tified Adams as her molester and described the attacks with specificity. Such detailed testimony rendered the evidence clear and convincing and admissible. *See State v. Aiken,* 322 S.C. 177, 470 S.E.2d 404 (Ct.App.1996) (holding witness's direct knowledge of defendant's participation provided sufficiently clear and convincing evidence of other bad acts under common-scheme-or-plan exception).

## II. Directed Verdict

■ Adams next contends the State failed to present sufficient evidence of intent to accomplish a sexual battery as defined by S.C.Code Ann. section 16–3–651(h) (1976). He asserts that "[t]here was insufficient evidence presented ... establishing that [Adams] assaulted the prosecutrix with the intent to place any of his body parts into the genital or anal openings of her body." This precise argument was neither raised to nor ruled upon by the trial court. Adams argued only that the evidence did not rise to the "level of a reasonable doubt as to counts 1, 2 and 3." Moreover, the record does not reflect that Adams renewed the motion at the close of his case. Adams's argument, therefore, is not preserved for our review. *See Medlock v. One 1985 Jeep Cherokee VIN 1JCWB7828FT129001,* 322 S.C. 127, 132, 470 S.E.2d 373, 376 (1996) ("The appellant has the burden of providing this court with a sufficient record upon which to make a decision."); *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) (holding making "standard motions" at trial does not preserve an issue for appellate review and stating, "A party cannot argue one ground for a directed verdict in trial and then an alternative ground on appeal."); *State v. Jordan,* 255 S.C. 86, 93, 177 S.E.2d 464, 468 (1970) ("This court has, in numerous cases, held that it will not consider a question on appeal which was not presented in the court below."); *State v. Parler,* 217 S.C. 24, 59 S.E.2d 489 (1950) (holding, under Circuit Court Rule 76, a defendant who fails to renew a directed verdict motion after presenting evidence during the defendant's case has not preserved the denial for review by the appellate court); *see also* Rule 19 note, SCRCrimP (stating the rule is "substantially the substance of Circuit Court Rule 76"); 15 S.C. Juris. *Appeal and Error* § 80 (1992) ("If a defendant presents evidence after the denial of his directed verdict

motion at the close of the plaintiff's case, he must make a directed verdict motion at the close of all the evidence to appeal the sufficiency of the evidence."); *cf. Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995), *aff'g in result and vacating in part* 316 S.C. 34, 446 S.E.2d 440 (Ct.App.1994) (affirming court of appeals' decision that directed verdict motion was not preserved for review because motion was not reviewed at the close of all the evidence, and vacating portion of court of appeals' opinion that addressed merits of directed verdict).

### III. Co-worker Incident

Finally, Adams argues the trial court erred in allowing testimony regarding an unrelated bad act at work. We find Adams waived any objection on this issue. When Adams objected to the testimony at trial regarding Adams's grabbing of a co-worker, the trial court sustained the objection and gave a curative instruction to the jury. Adams did not object to the sufficiency of the curative instruction or request a mistrial. An error is deemed cured if the objecting party accepts the ruling of the trial court and does not contemporaneously object to the sufficiency of the curative charge or move for a mistrial. *State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996).

**AFFIRMED.**

HOWELL, C.J., and CURETON, J., concur.