560 S.E.2d 636

**The STATE, Respondent,**

v.

**Jerry ROSEMOND, Appellant.**

**No. 3445.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2002.

Decided Feb. 11, 2002.

Rehearing Denied March 29, 2002.

Assistant Appellate Defender Robert M. Dudek, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Robert E. Bogan, Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for respondent.

ANDERSON, Judge:

Jerry Rosemond was convicted of strong arm robbery, resisting arrest, and assault and battery with intent to kill (ABIK). He appeals his conviction for strong arm robbery, arguing the trial court erred in failing to grant a directed verdict because there was no evidence he committed a larceny by using violence or intimidation. We affirm.

## FACTS/PROCEDURAL BACKGROUND

This appeal arises out of the alleged robbery of the Sphinx filling station, located on Pendleton Street in Greenville, South Carolina, on November 18, 1997. A witness to the event was Barbara Murray, a cashier working the second shift from 2:00 p.m. to 10:00 p.m.

According to Murray, a man walked into the store around 9:00 p.m. and went directly to the restroom. He stayed in the restroom for approximately five minutes and then came out and walked straight to the counter. Murray was just a few feet away on the other side of the cash register, sweeping in order to get ready for the next shift to take over.

Murray testified she did not think anything was unusual at first when the man walked up to the counter, as customers did that all the time, but she became frightened when he walked behind the counter:

The Solicitor: And when he came out of the ... bathroom, where was the first place that he went?

Murray: He just walked straight up to the counter.

The Solicitor: Straight up to the counter?

Murray: Uh-huh.

The Solicitor: And what did you do at that point?

Murray: At the time, I didn't think nothing about it because people do it all the time. And then when he came behind the counter, I just stood there and looked and I ran behind the freezer door and went back where they cook.

The Solicitor: *And why did you run behind the freezer door?*

Murray: *I was scared.*

The Solicitor: You were scared?

Murray: (Witness nods.)

The Solicitor: *And what was it that scared you?*

Murray: *Just the way he looked.* I mean, he didn't say anything. He didn't move toward anybody, he just looked, that's all, *it was like a glare.*

(emphasis added).

Murray testified the man proceeded to flip the cash register up in the air and slam it to the ground while she stood a few feet away:

The Solicitor: What did he do when he came there?

Murray: Well, coming up—like I said, he stumbled over the step. He got—he caught hisself (sic), he came around. He still did not say anything at all. He walked over to the register, he just pushed on the buttons, couldn't get it open. So he grabs the bottom of it, it's a two piece register. *He grabbed the bottom of it and just flips it up in the air. [It] fell on the floor. He picked it up and just slammed it down and it pops open.* He grabbed the money and run back out to the left side of the—well, I think the left side and ran out of it.

The Solicitor: *How close were you to this person when this happened?*

Murray: About—

The Solicitor: And you can use objects in the courtroom to say how close you were?

Murray: About from this end to that end right there.

The Solicitor: From the end of the witness box?

Murray: Yeah, this corner right here to the beginning of that piece of wood right there.

The Solicitor: To the beginning of the jury box?

Murray: Yeah.

The Solicitor: *So just a few feet?*

Murray: *Yeah.*

(emphasis added).

Murray explained she was frightened by the man's actions in slamming the cash register to the ground:

The Solicitor: When you said he took the cash register drawer and—tell me again what he did with that?

Murray: He just put his hands on the bottom side and picked it up. He just picked it up and it still wasn't open at that time, so he picked it up and slammed it on the floor and it popped open.

The Solicitor: *And did that frighten you?*

Murray: *Yeah, they're pretty heavy registers.*

The Solicitor: *They were pretty heavy registers?*

Murray: *Yeah.*

(emphasis added).

Murray stated she ran outside and saw the perpetrator running out of the side door and by the store. Murray acknowledged she was intimidated by the man:

> The Solicitor: Ms. Murray, did you feel intimidated when the defendant came behind the cash register?
>
> . . . .
>
> Murray: When I seen him flip the register up in the air, that's when it scared me.
>
> The Solicitor: It scared you?
>
> Murray: Yeah.

Murray identified Rosemond at trial as the perpetrator. In contrast, Rosemond admitted he walked into the Sphinx on the evening in question, but testified he turned around and walked back out because he did not see anyone in the store. Rosemond stated he was arrested as he walked down the street. He denied committing the robbery or attacking the arresting officers.

Defense counsel moved for a directed verdict on the strong arm robbery charge, arguing there was no evidence that Rosemond acted with force or intimidation based on Murray's testimony that the perpetrator did not brandish a weapon and did not make any threats or comments directly towards her or anyone else. The trial court denied the motion.

Rosemond was convicted of strong arm robbery, resisting arrest, and ABIK. He received concurrent sentences of six years in prison on each of the charges. In addition, he was ordered to successfully complete a drug diversion program. Rosemond appeals his conviction for strong arm robbery.

## STANDARD OF REVIEW

"A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." *State v. McHoney*, 344 S.C. 85, 97, 544 S.E.2d 30, 36 (2001) (citation omitted). "On a motion for a directed verdict in a criminal case, the trial court is concerned with the existence or non-existence of evidence, not its weight." *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). "If the State

presents any evidence which reasonably tends to prove the defendant's guilt, or from which the defendant's guilt could be fairly and logically deduced, the case must go to the jury." *Id.*

■ "On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State." *McHoney,* 344 S.C. at 97, 544 S.E.2d at 36 (citation omitted). "If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury." *Id.* (citation omitted).

### *LAW/ANALYSIS*

■ Rosemond contends the trial court erred in denying his motion for a directed verdict on the charge of strong arm robbery because there was no evidence from which a jury could find that he committed a larceny with force or intimidation. We disagree.

Initially, a question arises as to whether this issue is preserved for review as defense counsel did not specifically renew his directed verdict motion on the strong arm robbery charge at the close of all the evidence.

When the prosecution rested, defense counsel first stated he "would like to renew all of [his] previous objections." Defense counsel next moved for a directed verdict as to strong arm robbery, which was denied. After the defense presented evidence, the trial court specifically asked defense counsel whether he had any motions, and counsel responded: "Just renew my previous objections." The court then asked for any requests to charge. Although defense counsel did request that larceny be charged as a lesser included offense, Rosemond sets forth no argument on appeal concerning the court's denial of the request to charge a lesser included offense.

Based on the foregoing, it is arguable the directed verdict issue is not preserved as defense counsel did not specifically renew his directed verdict motion at the conclusion of the evidence. Rather, he made only a general reference to renewing his "previous objections," a statement he made earlier which did not include his directed verdict motion. *See State v.*

*Bailey,* 298 S.C. 1, 377 S.E.2d 581 (1989) (finding defense counsel's statement at the end of all the evidence that he was making the "standard motions" did not preserve the issue of directed verdict for appeal); *State v. Taylor,* 333 S.C. 159, 508 S.E.2d 870 (1998) (noting a general or nonspecific objection presents no issue for appellate review); *see .also State v. Parler,* 217 S.C. 24, 59 S.E.2d 489 (1950) (holding, under former Circuit Court Rule 76, the denial of the defendant's directed verdict motion was not preserved for appeal where he failed to renew the motion after presenting evidence); Note to Rule 19, SCRCrimP (stating the rule "is substantially the substance of Circuit Court Rule 76"); *State v. Adams,* 332 S.C. 139, 144, 504 S.E.2d 124, 126–27 (Ct.App.1998) (finding appellant's directed verdict motion was not preserved where the argument raised on appeal was not presented to the trial court, and "[m]oreover, the record does not reflect that Adams renewed the motion at the close of his case") (citing, *inter alia, State v. Parler,* 217 S.C. 24, 59 S.E.2d 489 (1950) and the Note to Rule 19, SCRCrimP); *State v. Harry,* 321 S.C. 273, 277, 468 S.E.2d 76, 79 (Ct.App.1996) ("A motion for a directed verdict made at the close of the [state's] case is not sufficient to preserve error unless renewed at the close of all the evidence, because once the defense has come forward with its proof, the propriety of a directed verdict can only be tested in terms of all the evidence.") (alteration in original) (citation omitted).

Because the issue was probably preserved by reference to the original motion for directed verdict, we elect to address the merits.

■ Common law robbery and "strong arm" robbery are synonymous terms for a common law offense whose penalty is provided for by statute.[1] *See Locke v. State,* 341 S.C. 54, 533 S.E.2d 324 (2000).

■ "Robbery is defined as the felonious or unlawful taking of money, goods or other personal property of any value from the person of another or in his presence by violence *or by putting such person in fear." State v. Bland,*

---

1. S.C.Code Ann. § 16–11–325 (Supp.2001) ("The common law offense of robbery is a felony. Upon conviction, a person must be imprisoned not more than fifteen years.").

318 S.C. 315, 317, 457 S.E.2d 611, 612 (1995) (emphasis added) (citation omitted); *see also State v. Gourdine,* 322 S.C. 396, 398, 472 S.E.2d 241, 242 (1996) ("Strong arm robbery is defined as the 'felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear.' ") (quoting *State v. Drayton,* 293 S.C. 417, 428, 361 S.E.2d 329, 335 (1987)). Thus, "[r]obbery is larceny from the person or immediate presence of another by violence *or intimidation." Dukes v. State,* 248 S.C. 227, 231, 149 S.E.2d 598, 599 (1966) (emphasis added); *see also State v. Brown,* 274 S.C. 48, 49, 260 S.E.2d 719, 720 (1979) ("The common-law offense of robbery is essentially the commission of larceny with force [or intimidation].") (citation omitted).

 "A thing is in the presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." *Commonwealth v. Homer,* 235 Mass. 526, 127 N.E. 517, 520 (1920).

Generally the element of force in the offense of robbery may be actual or constructive. Actual force implies physical violence. *Under constructive force are included "all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking \* \* \*. No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished,* if the transaction is attended with such circumstances of terror, such as threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, *the victim is put in fear."* 46 Am.Jur. 146.

*North Carolina v. Norris,* 264 N.C. 470, 141 S.E.2d 869, 872 (1965) (emphasis added) (quoting *North Carolina v. Sawyer,* 224 N.C. 61, 29 S.E.2d 34, 37 (1944)).

The trial court charged Rosemond's jury that "for the purpose of robbery, a thing is in the presence of a person if it be within his or her reach, inspection, observation or control

so that he or she could retain possession of it if not overcome by violence or prevented by fear."

In the current appeal, Rosemond contends he was entitled to a directed verdict on the charge of strong arm robbery because there was no evidence that he made any direct threats or committed any acts of violence against Murray or anyone else. However, strong arm robbery may be accomplished by *either* force *or* intimidation. Murray made numerous references during her testimony to being frightened of the perpetrator during this incident. She specifically noted she was scared by both the man's "glare" as he walked to the counter and the force he used in flipping the heavy cash register into the air and slamming it to the ground. Murray was obviously intimidated by the man's appearance *and* his actions, and thus acquiesced in the robbery because she had an apprehension of danger. She was standing only a few feet away as Rosemond wrestled with the cash register and it is readily apparent from her testimony that the cash register was sufficiently within her reach, inspection, observation, or control that she would have, if not prevented by fear, retained her possession of it, and that Murray was put in fear sufficient to suspend the free exercise of her will or to prevent resistance to the taking.

Murray's fears of being harmed by the perpetrator were reasonable based on the record before us. The arresting officers responding to the call testified Rosemond punched and struggled with them, at one point attempting to take the weapon of one of the officers. Rosemond lifted the second officer about three feet in the air and then slammed him violently to the ground. Rosemond was obviously a man of some size and strength and was capable by his actions of creating fear in Murray, as evidenced by her express testimony to this effect. We conclude there was sufficient evidence on all of the necessary elements to submit the offense of strong arm robbery to the jury.

## CONCLUSION

We hold the element of force in the offense of strong arm robbery may be *actual* or *constructive*. Actual force implies physical violence. Constructive force includes all demonstra-

tions of force, menaces, and all other means by which the person robbed is put in fear sufficient to overcome the free exercise of the person's will or prevent resistance to the taking. Regardless of how slight the cause creating the fear is or by what other circumstances the taking is accomplished, if the transaction is accompanied by circumstances of terror, such as threatening by word or gesture, as in the common everyday experiences of life are likely to create an apprehension of fear and induce a person to give up the property, the victim is placed in fear.

The trial court did not err in denying Rosemond's motion for directed verdict. Rosemond's conviction for strong arm robbery is

**AFFIRMED.**

CONNOR and HOWARD, JJ., concur.