THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Tony Dale Baldwin, Appellant.
 
 
 

Appeal From Anderson County
Alexander S. Macaulay, Circuit Court Judge

Unpublished Opinion No. 2006-UP-307
Submitted June 1, 2006  Filed July 5, 2006

AFFIRMED

 
 
 
Assistant Appellate Defender Tara S. Taggart, of S.C. Office of Appellate Defense, of Columbia, for Appellant.
Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, all of Columbia; and Solicitor Christina T. Adams, of Anderson; for Respondent.
 
 
 

PER CURIAM:  Tony Dale Baldwin was convicted of two counts of committing a lewd act on a minor.  He was sentenced on each count to concurrent terms of fifteen years imprisonment, suspended upon the service of eight years with five years probation.  Baldwin appeals, asserting the trial judge erred in failing to direct a verdict of acquittal.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
The record shows that Rachel, the mother of Peter and George, knew Baldwin from High School, and became reacquainted with him after moving back to Belton, South Carolina.[2]  Rachel testified that she was friends with Baldwin and, one day when she did not have a baby-sitter, Baldwin offered to watch the boys.  From November 2001 through February 2002, when the boys were not with their father or his family on a Saturday, Rachel would often leave Peter and George in Baldwins care while she worked.  The boys would usually arrive at Baldwins home on Friday evening and spend the night, since Rachel would often have to be at work early on Saturday mornings.  Sometimes Rachel would also spend the night at Baldwins before leaving for work the next morning, and sometimes she would not.  Rachel denied that she dated Baldwin, stating they only had a friendship and no romantic involvement.  
Shortly after late January or early February, her older son, George, began acting funny and did not want to go over to Baldwins house.  When Rachel questioned him, George told her about something that happened at Baldwins home.  Peter was present during this conversation but did not say anything.  Rachel later decided to ask Peter if it also happen[ed] to him before she called the Sheriffs office, and Peter confirmed that it had.  
Peter, who was twelve years old at the time of trial and had turned ten during the time period of the alleged incidents, testified that he knew Baldwin as one of his mothers friends.  He stated he spent time at Baldwins house, with only Baldwin and his brother present, when his mother had to work.  They went over to Baldwins house a lot, were alone with him a lot, and would spend the night at his home.  Sometimes, he and his brother would stay with relatives in Georgia and return from there to Baldwins house.  When they went to his home from Georgia, Baldwin would put the boys bags beside the washing machine, say that he smelled kerosene on their clothes from the relatives kerosene heater, and put all of the boys clothes in the washing machine.  Peter testified he and George would smell their clothes, but they did not smell like kerosene.  Baldwin would take the clothes the boys had on at the time as well, and give them a t-shirt to wear.  He did not give them anything else to wear on these occasions, and the boys wore nothing else but the t-shirts.  Peter testified, that after Baldwin gave them the t-shirts to wear, he, his brother, and Baldwin would start wrestling.  Baldwin would then touch them in our place we dont want to be touched.  Peter clarified that Baldwin would touch their wieners.  Baldwin touched Peter like this more than once.  Peter also observed Baldwin touch George in the same place while George was wearing a t-shirt with nothing under it.  When Baldwin would touch him, Peter backed off, and [Baldwin] acted like he didnt even know he touched [them].  
George, who was fourteen at the time of trial and had turned twelve during the time period in question, testified that Baldwin used to baby-sit them in his home while their mother worked.  The boys would go to his house every other weekend and would stay overnight, sometimes with his mother staying there too.  Almost every time they went to Baldwins home, they would be alone with Baldwin.  According to George, at the times his mother would go to work, Baldwin would touch the boys in [their] private parts.  George stated Baldwin would just grab us and we would try to push him off or something, but that Baldwin just acted like he never done anything wrong.  When Baldwin touched him in this manner, George would only be wearing a t-shirt and nothing else.  He would wear the t-shirt because Baldwin would take his and Peters clothes and throw them in the washing machine.  Just before Baldwin would touch him, they would be wrestling.  When George told Baldwin not to touch him, Baldwin would back off, and then a few minutes later he would do the same thing.  George further testified that they would take clean clothes to Baldwins house, and that it did not matter whether the clothes were clean or dirty as Baldwin would throw all of the clothes in the washing machine.  While he stated the clothes could have smelled like kerosene, he did not notice the odor on them.  
At the close of the States case, Baldwin moved for a directed verdict.  He argued that a simple touching during a wrestling match did not rise to the level of a lewd or lascivious act, and there was no evidence that his actions were with the intent of gratifying the lust, passion, or sexual desires of him or the children.  The trial court found there was sufficient evidence warranting submission to the jury and denied Baldwins motion.  
LAW/ANALYSIS
On appeal, Baldwin contends the trial court erred in failing to grant his motion for directed verdict asserting there was insufficient evidence of his guilt.  He argues, at most, the evidence shows he wilfully grabbed the boys crotches while roughhousing, and there was no evidence the roughhousing was lewd or lascivious, or that the roughhousing was done with the intent of arousing, appealing to, or gratifying his or the childrens lust, passions or sexual desires.  We disagree.
We first note this issue may not be properly preserved for our review.   While Baldwin did make a motion for directed verdict at the close of the States case, the record reveals Baldwin thereafter presented two witnesses on his behalf.  The record before us, however, does not contain the entire portion of the transcript immediately after the conclusion of all the testimony, and does not show whether Baldwin renewed his motion at the close of all the evidence.  See State v. Freiburger, 366 S.C. 125, 135, 620 S.E.2d 737, 742 (2005) (holding the appellant has the burden of providing the appellate court with a sufficient record for review); State v. Adams, 332 S.C. 139, 144-45, 504 S.E.2d 124, 126-27 (Ct. App. 1998) (finding a directed verdict motion was not preserved for appellate review where the precise argument raised on appeal was not presented to the trial court, and, moreover, the record did not reflect the defendant renewed the motion at the close of his case) (emphasis added); State v. Harry, 321 S.C. 273, 277, 468 S.E.2d 76, 79 (Ct. App. 1996) (A motion for a directed verdict made at the close of the [states] case is not sufficient to preserve error unless renewed at the close of all the evidence, because once the defense has come forward with its proof, the propriety of a directed verdict can only be tested in terms of all the evidence.) (alteration in original) (citation omitted).
Even if we assume that Baldwin renewed his motion and properly preserved the issue for review, we nonetheless find no error.  When ruling on a directed verdict motion, the trial court is concerned with the existence of evidence, not its weight.  State v. Paris, 363 S.C. 477, 481, 611 S.E.2d 501, 502-03 (2005).  A defendant is entitled to a directed verdict when the evidence merely raises a suspicion of guilt or when the State fails to present evidence on a material element of the offense charged.  State v. Brown, 360 S.C. 581, 586, 602 S.E.2d 392, 395 (2004).  However, if the State presents any evidence which reasonably tends to prove the defendants guilt or from which his guilt could be fairly and logically deduced, the trial court must send the case to the jury.  Id.  On appeal from the denial of a motion for directed verdict, the appellate court must view the evidence in the light most favorable to the State.  Paris, 363 S.C. at 481, 611 S.E.2d at 503.  This court may reverse the trial courts denial of the motion only if there is no evidence to support the trial courts ruling.  State v. Lindsey, 355 S.C. 15, 20, 583 S.E.2d 740, 742 (2003).
Baldwin was charged with two counts of committing a lewd act upon a child, a violation of section 16-15-140 of the South Carolina Code, which provides in pertinent part as follows:

It is unlawful for a person over the age of fourteen years to wilfully and lewdly commit or attempt a lewd or lascivious act upon or with the body, or its parts, of a child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of the person or of the child.

S.C. Code Ann. § 16-15-140 (2003).  
Viewing the evidence in the light most favorable to the State, it is clear there was evidence presented that reasonably tended to prove Baldwins guilt, or from which his guilt could be fairly and logically deduced.  The boys both testified Baldwin would take all their clothes and wash them, whether the clothes were dirty or clean, and provide them with only t-shirts to wear.  He then touched or grabbed their penises or private parts while they wore only the t-shirts, and that he did this on more than one occasion.  Additionally, they testified, when they would try to push him off or they would back away, Baldwin would act as if he had done nothing wrong.  Yet, when George told him not to touch him, a few minutes later Baldwin would do the same thing.  Thus, there is clearly evidence Baldwin willfully and lewdly committed or attempted to commit a lewd or lascivious act.  Further, we find there is sufficient evidence from which Baldwins intent may be inferred from the facts and circumstances.  See  State v. Carroll, 277 S.C. 306, 308, 286 S.E.2d 382, 383 (1982) (Intent is seldom susceptible to proof by direct evidence and must ordinarily be proved by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred.).  Accordingly, we find the trial judge properly denied Baldwins motion for directed verdict.
Based on the foregoing, Baldwins convictions are
 AFFIRMED.
 HUFF, STILWELL, and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2]Because of the sensitive nature of this case, the victims names and that of their mother have been changed in this opinion to protect their identities.