757 S.E.2d 744

**Ronald I. ROBERTS, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**Appellate Case No. 2010–164306.**

**No. 5223.**

Court of Appeals of South Carolina.

Heard Jan. 8, 2014.
Decided April 23, 2014.

Jerry Nicholas Theos, of Uricchio, Howe, Krell, Jacobson, Toporek, Theos & Keith, P.A., of Charleston, for petitioner.

Attorney General Alan McCrory Wilson, Assistant Attorney General Matthew J. Friedman, and Assistant Attorney General Ashley R. Wilson, all of Columbia, for respondent.

HUFF, J.

Following his jury convictions for trafficking in cocaine and possession with intent to distribute (PWID) cocaine within one-half mile proximity of a school, Ronald I. Roberts was sentenced to concurrent terms of twenty-five years imprisonment for the trafficking charge and ten years imprisonment for the proximity charge. In this belated direct appeal, Roberts contends the trial court erred in (1) failing to grant his motion for directed verdict and (2) failing to dismiss a confusing trafficking indictment which led to a confusing jury verdict. We find the directed verdict issue is not preserved; however, based upon the confusing jury verdict, we reverse Roberts' trafficking conviction and remand for a new trial.

## FACTUAL/PROCEDURAL BACKGROUND

In May 2003, the Grand Jury true-billed indictments against Roberts for trafficking in cocaine in an amount between 200 and 400 grams, and PWID cocaine within one-half mile proximity of a school. When the matter was called to trial in August 2006, the solicitor referred to the trafficking indictment as "trafficking cocaine," without mention of any amount. The State thereafter argued the case and presented evidence linking Roberts to the possession of 196.72 grams of cocaine found underneath Roberts' bed in his home, and that Roberts' home was located less than a half-mile from an elementary

school. After the State rested, trial counsel made a general motion for directed verdict on both charges, which the trial court denied. The defense then rested without presenting any evidence.

During closing arguments, the solicitor specified that the charge against Roberts involved 100 to 200 grams of the drug and the State was required to prove Roberts was in control of at least 100 grams, with the evidence showing he was in control of around 196 grams of cocaine. The trial court then charged the jury that Roberts was charged with "trafficking cocaine, more than 100 grams" and that, pursuant to the indictment, the State was required to prove beyond a reasonable doubt that the amount of the cocaine "was one hundred grams or more, but less than two hundred grams." The court also stated, although the indictments could not be considered as evidence, the jury foreman was to use the indictments to record the jury's verdict. At the conclusion of the charge, the verdict forms were presented to the jury.

When the jury returned with its verdicts on the two charges, the clerk read from the verdict forms as follows: "Case number 2003–GS–10–3696 (sic),[1] *The State of South Carolina versus Ronald Irving Roberts,* indicted for trafficking cocaine, **two hundred to four hundred grams,** we the jury find the defendant guilty. Signed by [the] foreperson, dated August 10, 2006." (bolded emphasis added). The clerk then asked the jurors to raise their hands if that was their verdict, and the record indicates all hands were raised. After the clerk then read the verdict from the PWID proximity indictment finding Roberts guilty of that charge as well, and the jury confirmed that verdict, a bench conference was held off the record. Once back on the record, the clerk, without any explanation, then stated as follows: "As to indictment 2003–GS–10–3296, *The State of South Carolina versus Ronald Irving Roberts,* indicted for trafficking cocaine, **one hundred to two hundred grams,** we the jury find the defendant guilty. Signed by [the] foreperson, dated August 10, 2006." (bolded emphasis added). The jurors were again asked to confirm that was their verdict by raising their hands, and the record

---

1. It appears the correct case number for the trafficking charge was 2003–GS–10–3296.

indicates they did so. At this point, trial counsel asked to look at the verdict form. After reviewing it, the following colloquy occurred:

[Trial Counsel]: Your Honor, there does appear to be a(sic) issue on—indictment 3296. On the page—on the side of the indictment form, where the verdict appears, it's typed trafficking cocaine, two hundred, dash, four hundred grams, even though the indictment itself ... on the other page ... in excess of two hundred grams and then it was marked through with a one.

... I'd not caught that before, ... and I don't know whether there is any issue about .. was this indictment amended before or after it was presented to the jury—Grand Jury? I just don't know.

[Court]: All right, so technically it's a lesser included offense that the State elected to go forward with, with the amount being between one hundred and two hundred. Am I wrong?

[Solicitor]: That's correct, your Honor. The official weight was over two hundred in the field weight. The testing came back and it came in slightly under two hundred.

The State proceeds on a lesser included of one hundred/two hundred grams, your Honor.

[Trial Counsel]: ... [B]ut was the indictment for in excess of two hundred grams? That's ... the point.

[Court]: It ... originally was. But, as you know, many crimes have lesser included offenses.

[Trial Counsel]: But I thought that I was instructed here that this offense does not have a lesser included offense of less than the hundred grams.

Your Honor, we would object to the verdict for the indictment for trafficking cocaine, and would move to dismiss it, ...—*I'm not sure whether the jury found my client guilty of more than two hundred grams of cocaine or more than one hundred grams of cocaine by looking at the indictment.*

[Court]: I'll have to deny any motion and let the verdict stand based on the principle of lesser included offense and conforming everything to the evidence that was presented.

Trial counsel noted the trial court had declined to give a requested lesser included instruction of trafficking in more

than ten but less than 100 grams of cocaine. The court clarified it declined to do so because the evidence showed the amount of drugs involved was 196 grams, and there was no evidence to support a verdict for less than 100 grams of the drug. Trial counsel then asked for the jury to be polled. The clerk informed the jurors he was going to ask them two questions, "Is this your verdict, and is this still your verdict," and proceeded to ask them "Are these your verdicts," and "Are they still your verdicts," to which the jurors each responded affirmatively to both questions. However, the clerk did not mention any weights associated with the trafficking charge nor clarify to which verdict he was referring on the trafficking charge and whether they were affirming a verdict to trafficking between 200 and 400 grams or between 100 and 200 grams of cocaine.

## LAW/ANALYSIS

### 1. Directed Verdict

■ Roberts first contends the trial court erred in failing to direct a verdict on the trafficking charge. He argues the undisputed evidence presented at trial was that the amount of cocaine retrieved from his home weighed 196.72 grams, and therefore the evidence did not support the indicted offense of trafficking between 200 and 400 grams of cocaine. The State, however, contends this issue is not properly preserved. After the State rested its case, trial counsel argued only as follows:

> The defendant would move for a judgment of acquittal on the grounds that the State has not offered evidence from which the jury could find, beyond a reasonable doubt, that he was either guilty of trafficking or guilty of possession with intent to distribute within a half-a-mile of the courthouse (sic). I don't care to argue any details.

Notably, trial counsel did not bring to the trial court's attention the discrepancy between the amount of cocaine listed in the indictment and the amount presented as evidence at trial. The trial court denied the motion "based on the evidence that's before the court."

We agree with the State that this issue is not preserved for review. Roberts only made a general motion for directed verdict based upon the sufficiency of the evidence to show he

was guilty of trafficking cocaine and PWID within proximity. He never argued, as he does on appeal, that the undisputed evidence showed the amount attributable to him was only 196.72 grams and therefore the evidence did not support the indicted offense of trafficking between 200 and 400 grams of cocaine. Indeed, as shown by the matter raised following the jury's verdict, trial counsel was not even aware, at that time, of any discrepancy between the amount charged in the indictment and the amount of cocaine proved by the State in order to argue the matter at the mid-trial directed verdict stage. *See State v. Sterling,* 396 S.C. 599, 612, 723 S.E.2d 176, 183 (2012) ("A general directed verdict motion ... does not preserve any issue for appeal."); *State v. Jennings,* 394 S.C. 473, 481, 716 S.E.2d 91, 95 (2011) ("For an issue to be properly preserved it has to be raised to and ruled on by the trial court."); *State v. Freiburger,* 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (holding an issue is not preserved for appellate review when one ground is raised below and another ground is raised on appeal); *State v. Adams,* 332 S.C. 139, 144, 504 S.E.2d 124, 126 (Ct.App.1998) (finding, when the only argument made at trial was that the evidence did not rise to the level of a reasonable doubt, and the precise appellate argument was neither raised to nor ruled upon by the trial court, appellant's challenge to the denial of his motion for directed verdict was not preserved for review).

## 2. Confusing Indictment Leading to Confusing Verdict

The record before us contains a copy of a true-billed, unaltered trafficking indictment, apparently provided to trial counsel pursuant to Rule 5, SCRCrimP, which is captioned "INDICTMENT FOR TRAFFICKING COCAINE *200–400 GRAMS,*" with the following charging language in the body of the indictment:

That Ronald Irving Roberts did in Charleston County on or about March 4, 2003, knowingly sell, manufacture, cultivate, deliver, purchase, or bring into this State, or did provide financial assistance or otherwise aid, abet, attempt, or conspire to sell, manufacture, cultivate, deliver, purchase, or bring into this State, or was knowingly in actual or constructive possession or knowingly attempted to become in actual or constructive possession of a controlled substance or a controlled substance analogue, to wit: Cocaine, *in excess of*

*200.00 grams.* This is in violation of § 44–53–370 of the South Carolina Code of Laws (1976) as amended.

(emphasis added). The back of this indictment, showing the action of the Grand Jury and providing a place to record the verdict, indicates it is an "Indictment for TRAFFICKING COCAINE *200–400 GRAMS.*" (emphasis added). Also appearing in the record is an altered version of this indictment which is still captioned "INDICTMENT FOR TRAFFICKING COCAINE *200–400 GRAMS,*" but within the body on the indictment includes the number "1" drawn over the number "2," such that the altered version provides Roberts did traffic in cocaine "*in excess of 100.00 grams.*" (emphases added). On the back of this altered version, which includes the jury's written notation of a guilty verdict as well as the foreperson's signature and the date, it continues to indicate it is an "Indictment for TRAFFICKING COCAINE *200–400 GRAMS* " (emphasis added).

Roberts asserts error in the trial court's denial of his motion to dismiss his indictment based upon the surreptitiously and partially altered indictment, in conjunction with questioning of the jury as to its verdict. He contends the altered trafficking indictment was confusing, and this in turn led to confusion regarding the jury verdict. Roberts notes that varying amounts were listed on the verdict form used by the jury, which created confusion as to the jury's actual verdict. Roberts also argues the error could not be harmless because the trial court essentially interpreted the jury's action of finding him guilty of trafficking in 100 to 200 grams, denying him his Sixth Amendment right to a jury trial which includes the right to have the jury, rather than the trial court, reach the verdict. He contends the trial court's decision to interpret the jury's verdict in this manner denied him the right to a trial by jury, and his conviction should be reversed.[2] We agree.

 First, we find no merit to the State's assertion that this issue is not preserved for review based upon Roberts' failure to object to the indictment prior to the jury being sworn. The State cites to language in *State v. Gentry,* 363

---

2. Though Roberts actually asks that his "convictions" be reversed, there is no basis for overturning his PWID within proximity conviction, and none is argued by Roberts on appeal. Nor is such an argument preserved for review as it was not raised to the trial court.

S.C. 93, 101, 610 S.E.2d 494, 499 (2005), wherein our supreme court held "if an indictment is challenged as insufficient or defective, the defendant must raise that issue before the jury is sworn and not afterwards." However, in support of this holding, *Gentry* relies on section 17–19–90 of the South Carolina Code, which provides, "Every objection to any indictment for *any defect apparent on the face* thereof shall be taken by demurrer or on motion to quash such indictment before the jury shall be sworn and not afterwards." S.C.Code Ann. § 17–19–90 (2003) (emphasis added). It is undisputed the parties do not know when, where, or by whom the alteration was made to the original true-billed indictment. At a PCR hearing, trial counsel testified he was associated with the case approximately one week before the trial, at which time he reviewed the discovery file that included the unaltered indictment. However, according to trial counsel, the indictment returned with the jury verdict included the alteration. Thus, there is no indication that any defect was apparent on the face of the indictment at the time the jury was sworn. Further, it is clear that, under appropriate circumstances, amendments may be made to indictments subsequent to the swearing of the jury. *See Granger v. State*, 333 S.C. 2, 5, 507 S.E.2d 322, 324 (1998) (noting an indictment "may be amended at trial only if the amendment does not change the nature of the offense charged"); S.C.Code Ann. § 17–19–100 (2003) (providing, if it does not change the nature of the offense charged, the court may amend an indictment under certain circumstances, including when "on the trial of any case there shall appear to be any variance between the allegations of the indictment and the evidence offered in proof thereof ...").

More importantly, although the alteration to the indictment is part and parcel to Roberts' argument on this matter, we do not believe the issue on appeal is a challenge to the sufficiency of the indictment or permissibility of amendment. Rather, Roberts challenges the trial court's denial of his post-verdict motion based upon the confusing jury verdict.[3] In so doing, Roberts notes the surreptitious alteration of the indictment which was included in the verdict form delivered by the jury;

---

3. Though trial counsel moved to dismiss the indictment for trafficking, he clearly raised an objection to the confusing verdict, noting he could not discern under the circumstances whether the jury found Roberts

the fact that the clerk initially announced the verdict as a finding of guilt on the trafficking in cocaine between 200 and 400 grams; that no on-record clarification was made before the clerk inexplicably announced a guilty verdict of trafficking in 100 to 200 grams of cocaine; the jury affirmed both of these verdicts; the jury was never informed they were being asked about two different weight ranges; and, upon polling, the trial court did not specify which of the two different verdicts it was asking the jury to affirm. Roberts does not assert the indictment was somehow defective or deficient, but argues the circumstances surrounding the partial alteration of the indictment presented to the jury for use as a verdict form, along with the subsequent readings of the verdict by the clerk and affirmation and polling of the jury, ultimately resulted in a confusing jury verdict.

On the merits, we find the confusing and questionable circumstances surrounding the jury verdict were such that it led to an ambiguous and uncertain verdict. First, there is absolutely no indication of when and by whom the alteration was made to the indictment. There is nothing in the record to show any motion was ever made to amend the indictment or that the trial court granted such motion. Though the trial court treated the matter as if the alteration were a permissible amendment to the indictment,[4] it did not do so until *after* the verdict was already returned. Thus, assuming arguendo that an amendment would have been proper under the facts of this case, nothing in the full record before us[5] shows there was ever any timely, formal amendment of the indictment.[6]

---

guilty of trafficking in the 100 to 200 gram weight, or trafficking in the 200 to 400 gram amount. Further, the trial court stated it would "have to deny *any* motion," by trial counsel in this regard.

4. *See State v. Means*, 367 S.C. 374, 385–86, 626 S.E.2d 348, 355 (2006) ("Amendments to an indictment are permissible if: (1) they do not change the nature of the offense; (2) the charge is a lesser included offense of the crime charged in the indictment; or (3) the defendant waives presentment to the grand jury and pleads guilty.").

5. Because this matter was initiated by a PCR action, the complete transcript from Roberts' trial is included within the record.

6. We do not address whether a timely amendment to the indictment would have been permissible in this matter, but simply assume so for the sake of argument.

In *Wertz v. State*, 349 S.C. 291, 562 S.E.2d 654 (2002), our supreme court stated as follows:

A verdict should be certain and import a definite meaning free from ambiguity.

If a party believes there is confusion in the wording of a jury's verdict, that party should call it to the attention of the trial court at the time the verdict is rendered so that any confusion in the verdict's language can be easily cleared up. It is the duty of the trial judge to decide what the verdict meant, and, in reaching his conclusion thereabout, it [is] his duty to take into consideration not only the language of the verdict, but all the matters that occurred in the course of the trial. . . .

A verdict of a jury should be upheld when it is possible to do so, and carry into effect what was clearly the intention of the jury. When a verdict is so confused, however, that it is not absolutely clear what the jury intended to do, the safest and best course for the court to pursue is to order a new trial. Judges and parties should not be required to guess as to what verdict a jury sought to render.

*Id.* at 296, 562 S.E.2d at 657 (citations and quotation marks omitted). Here, there was an alteration to the indictment, which does not appear to have been timely or formally amended. The indictment was only partially altered and done in such a way that there were inconsistencies in the amount of drugs involved shown in the three places on the altered indictment. Additionally, this altered and inconsistent indictment was used by the jury to record its verdict. Further, trial counsel called the problems with the verdict to the trial court's attention. The court, however, focused on whether trafficking in 100 to 200 grams of cocaine would be a lesser included offense of a charge of trafficking in 200 to 400 grams of cocaine or whether an amendment of the indictment would be permissible as conforming to the evidence presented at trial. Taking into consideration the inconsistencies in the amount of drugs stated in the indictment upon which the jury recorded its verdict and the fact that the clerk first read the guilty verdict to be for the greater amount of drugs and then inexplicably announced the verdict was for the lesser amount, we believe there was ambiguity and confusion as to the jury's verdict. Further, this ambiguity was never clarified after trial

counsel called it to the court's attention. In the final polling of the jury, the jurors were not told which drug-amount conviction they were asked to affirm. Considering the totality of the circumstances, we believe the verdict was so confused that it is not absolutely clear what the jury intended to do, and the trial court should have ordered a new trial. *See id.* at 296, 562 S.E.2d at 657 ("When a verdict is so confused ... that it is not absolutely clear what the jury intended to do, the safest and best course for the court to pursue is to order a new trial.").

■■■ Additionally, we do not believe the matter can be deemed harmless. The most important element of the provision in the Sixth Amendment to the Constitution of the United States that the accused in a criminal prosecution have the right to a speedy and public trial by an impartial jury, is "the right to have the jury, rather than the [trial court], reach the requisite finding of 'guilty.'" *Sullivan v. Louisiana,* 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "Thus, although a [trial court] may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, [it] may not direct a verdict for the State, no matter how overwhelming the evidence." *Id.* "The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilt." *Id.* at 280, 113 S.Ct. 2078. "Although most constitutional errors have been held amenable to harmless-error analysis, ... some will always invalidate the conviction." *Id.* at 279, 113 S.Ct. 2078. In a "[h]armless-error review," the court looks "to the basis on which the 'jury *actually rested* its verdict,'" such that the inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* "[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be— would violate the jury-trial guarantee." *Id.*

Regardless of how overwhelming the evidence of Roberts' guilt to trafficking in 100 to 200 grams of cocaine, we find the trial court improperly attempted to interpret a confusing verdict, and the error in so doing cannot be considered

136

harmless.[7] Given the confusing verdict, "the safest and best course ... is to order a new trial." *Wertz*, 349 S.C. at 296, 562 S.E.2d at 657.

## CONCLUSION

Based on the foregoing, we reverse Roberts' trafficking conviction and remand for a new trial.

**REVERSED AND REMANDED.**

GEATHERS and LOCKEMY, JJ., concur.

---

7. We find no merit to the State's assertion Roberts cannot show he was prejudiced by the *amendment* to the weight of the drugs. As noted, there is nothing to show the indictment was ever formally or timely amended. Further, the question here is not whether amendment of the indictment would have been properly permitted, but whether the circumstances surrounding the jury's verdict showed such confusion that it is not absolutely clear what the jury intended to do. Because the circumstances surrounding the jury verdict were so confused that it cannot be clearly discerned what the jury intended to do, we find the matter cannot be considered harmless.