**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-4764

UNITED STATES OF AMERICA,

                   Plaintiff - Appellee,

          v.

KAREEM ANTWAN DOCTOR,

                   Defendant - Appellant,

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, Senior
District Judge.  (2:13-cr-00811-PMD-1)

Argued: September 23, 2016          Decided: November 21, 2016

Before GREGORY, Chief Judge,  and WILKINSON and DIAZ, Circuit
Judges.

Affirmed by published opinion.  Chief Judge Gregory wrote the
opinion, in which Judge Wilkinson and Judge Diaz joined.  Judge
Wilkinson wrote a separate concurring opinion.

**ARGUED:**  Emily Deck Harrill, OFFICE OF THE FEDERAL PUBLIC
DEFENDER, Columbia, South Carolina, for Appellant.  Robert Frank
Daley, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Columbia,
South Carolina, for Appellee.  **ON BRIEF:**  William N. Nettles,
United States Attorney, Columbia, South Carolina, Sean Kittrell,
Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Charleston, South Carolina, for Appellee.

GREGORY, Chief Judge:

Kareem Antwan Doctor appeals his fifteen-year sentence for unlawful possession of a firearm. The district court imposed an enhanced sentence pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), after finding that Doctor had two predicate drug offenses and one predicate violent felony. Doctor challenges the district court's determination that his prior conviction for South Carolina strong arm robbery qualifies as a violent felony under the ACCA. Finding no error with the district court's application of the ACCA enhancement, we affirm.

I.

In April 2012, North Charleston police officers received a call from a woman who alleged that Doctor had stolen a cell phone and was inside the residence at 5309 Alvie Street with a gun. The officers arrived on the scene and, after reading Doctor his Miranda rights, questioned him about the firearm. Doctor led the officers to a .380 caliber pistol on the couch. Doctor eventually pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The probation officer recommended that Doctor be sentenced under the ACCA, which mandates a minimum of fifteen years' imprisonment for a defendant who violates § 922(g) and "has three previous convictions" for a "violent felony or a serious

2

drug offense, or both." 18 U.S.C. § 924(e)(1). Doctor had two prior convictions for possession with intent to distribute cocaine, which he did not contest qualified as serious drug offenses, as well as a prior conviction for South Carolina strong arm robbery ("South Carolina robbery").[1] At sentencing, the district court held, over Doctor's objection, that the robbery conviction was an ACCA violent felony. The district court designated Doctor an armed career criminal based on his three predicate offenses and imposed the mandatory minimum sentence of fifteen years.

## II.

We review de novo whether a prior conviction qualifies as an ACCA violent felony. United States v. Hemingway, 734 F.3d 323, 331 (4th Cir. 2013). The ACCA defines "violent felony," in pertinent part, as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).[2] The issue on

---

[1] South Carolina strong arm robbery and common law robbery are "synonymous terms for a common law offense whose penalty is provided for by statute." State v. Rosemond, 560 S.E.2d 636, 640 (S.C. Ct. App. 2002) (footnote omitted). For ease of reference, we refer to the offense as South Carolina robbery.

[2] The ACCA separately defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (Continued)

3

appeal is whether South Carolina robbery meets the definition of violent felony in § 924(e)(2)(B)(i), known as the "force clause."

To determine whether South Carolina robbery matches this definition and can thus be used to enhance a criminal sentence, we apply the "categorical approach." United States v. Baxter, 642 F.3d 475, 476 (4th Cir. 2011). The categorical approach directs courts to examine only the elements of the state offense and the fact of conviction, not the defendant's conduct.[3] Id. In conducting this analysis, "we focus 'on the minimum conduct'" required to sustain a conviction for the state crime, United States v. Gardner, 823 F.3d 793, 803 (4th Cir. 2016) (quoting Castillo v. Holder, 776 F.3d 262, 267 (4th Cir. 2015)), although there must be a "realistic probability, not a theoretical possibility," that a state would actually punish that conduct,

_____

"is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). That subsection has no application here, as robbery is not an enumerated crime and the Supreme Court deemed the clause concerning risk of physical injury unconstitutionally vague in Johnson v. United States ("Johnson II"), 135 S. Ct. 2551, 2557 (2015).

[3] Courts apply the "modified categorical approach" where the prior state offense is divisible, meaning it sets out multiple elements in the alternative and at least one set of elements matches the federal definition. Descamps v. United States, 133 S. Ct. 2276, 2284 (2013). Because South Carolina robbery is a nondivisible offense, the modified categorical approach "has no role to play in this case." Id. at 2285.

4

id. (quoting Moncrieffe v. Holder, 133 S. Ct. 1678, 1684-85 (2013)).  We look to state court decisions to determine the minimum conduct needed to commit an offense, id., and to identify the elements of a state common law offense, Hemingway, 734 F.3d at 332.  We then compare those elements to the definition of violent felony in the force clause.

In State v. Rosemond, the South Carolina Supreme Court defined robbery as the "felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear."  589 S.E.2d 757, 758 (S.C. 2003).  A defendant can thus commit robbery in South Carolina by alternative means of "violence" or "intimidation."  Id. at 758-59.  When evaluating intimidation, courts ask whether an "ordinary, reasonable person in the victim's position would feel a threat of bodily harm from the perpetrator's acts."  Id. at 759 (citing United States v. Wagstaff, 865 F.2d 626 (4th Cir. 1989)).

If either robbery by means of violence or by means of intimidation fails to match the force clause definition, the crime is not a violent felony.  See Gardner, 823 F.3d at 803. Doctor offers several reasons why South Carolina robbery is not a categorical match, largely focusing on robbery by intimidation.  He first contends that a robber may intimidate a

victim without "the use, attempted use, or threatened use of physical force."

A review of South Carolina law reveals, however, that intimidation necessarily involves threatened use of physical force. The South Carolina Supreme Court has indicated that a robber intimidates a victim by threatening force. See State v. Mitchell, 675 S.E.2d 435, 437 (S.C. 2009) (stating that robbery involves either "employment of force or threat of force") (quoting State v. Moore, 649 S.E.2d 84, 88 (S.C. Ct. App. 2007)). The issue, then, is whether intimidation under South Carolina law requires the force threatened to be "physical force" within the meaning of the ACCA. The Supreme Court has defined "physical force" as "violent force--that is, force capable of causing physical pain or injury to another person." Johnson v. United States ("Johnson I"), 559 U.S. 133, 140 (2010). To constitute intimidation in South Carolina, a robbery victim must "feel a threat of bodily harm" based on the defendant's acts. Rosemond, 589 S.E.2d at 759. We find that these two standards align. There is no meaningful difference between a victim feeling a threat of bodily harm and feeling a threat of physical pain or injury. See United States v. McNeal, 818 F.3d 141, 154 (4th Cir. 2016). It follows that to constitute intimidation in South Carolina, a robbery victim must feel a threat of physical force based on the defendant's acts.

6

In other words, a defendant intimidates a victim by threatening physical force.

Notably, the South Carolina Supreme Court modeled its definition of intimidation in robbery cases after the one this Circuit uses in federal bank robbery cases under 18 U.S.C. § 2113(a). The Rosemond definition--whether an ordinary victim feels a threat of bodily harm from the robber's acts--adopts and indeed cites the definition from our Wagstaff decision. Rosemond, 589 S.E.2d at 759 (citing Wagstaff, 865 F.2d at 626); see Wagstaff, 865 F.2d at 627 ("[T]aking 'by intimidation' under section 2113(a) occurs when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." (emphasis omitted) (quoting United States v. Higdon, 832 F.2d 312, 315 (5th Cir. 1987)). This Court recently confirmed in McNeal that intimidation in the context of § 2113(a) bank robbery necessarily entails a threat of violent force. 818 F.3d at 153. Because South Carolina uses effectively the same definition of intimidation that we use in § 2113(a) bank robbery cases, this holding lends persuasive support to our conclusion here that intimidation in the context of South Carolina robbery requires the threatened use of physical force. Indeed, like the defendants in McNeal, Doctor has not "identified a single [] robbery prosecution where the

7

victim feared bodily harm"--that is, was intimidated--by "something other than violent physical force." Id. at 156.

Doctor instead highlights how a defendant can effectuate a robbery with only a slight threat. He seizes on the following discussion of constructive force[4] in the South Carolina Court of Appeals opinion in State v. Rosemond: "[r]egardless of how slight the cause creating the fear is or by what other circumstances the taking is accomplished, if the transaction is accompanied by circumstances of terror, such as threatening by word or gesture, . . . the victim is placed in fear." 560 S.E.2d 636, 641 (S.C. Ct. App. 2002) (emphasis added). But whether a robber's threat is slight does not resolve the force clause inquiry; what matters is whether, as Rosemond explains, the threat creates a fear of bodily injury in a reasonable person. Under the right circumstances, a slight threat--"you better hand over the money, or else," or even just a menacing stare--can communicate an intent to cause great bodily injury. Put simply, the slight or implicit nature of a threat does not render it nonviolent.

---

[4] Though the South Carolina Court of Appeals did not explicitly define the term, "constructive force" generally means "[t]hreats and intimidation to gain control or prevent resistance; esp., threatening words or gestures directed against a robbery victim." Constructive Force, Black's Law Dictionary (10th ed. 2014).

8

Doctor next argues that South Carolina robbery is not an ACCA violent felony because it does not match the force clause requirement that force be directed "against the person of another." Again focusing on robbery by intimidation, he asserts that a defendant can commit the crime even where his or her threatening behavior is not specifically aimed at the victim. Doctor suggests that the facts of Rosemond illustrate that a defendant can be convicted for applying force against property rather than people.

The defendant in Rosemond entered a convenience store around 9:00 p.m. and, after spending a few minutes in the bathroom, immediately "went behind the counter to the register" and "glare[d]" at the store clerk who stood "just a few feet" away. 589 S.E.2d at 758. When the defendant tried and failed to open the cash register, he grabbed the "heavy" register, flipped it into the air, picked it up again, and slammed it down once more, finally popping it open. Id. at 759. The store clerk testified that she was scared by both the defendant's glare and his slamming of the cash register. Id. at 758. The South Carolina Supreme Court upheld the defendant's conviction, finding that a reasonable person in the clerk's position "would have felt a threat of bodily harm from petitioner's acts." Id. at 759. The court, then, did not affirm just because the clerk was generally fearful during the defendant's assault on the cash

9

register.    It  sustained  the  conviction  after  specifically finding that the defendant's actions threatened a similar use of violent  force  against  the  clerk.    Rosemond  thus  confirms  that  a defendant's  use  or  threatened  use  of  force  must  be  directed "against  the  person  of  another."    This  interpretation  makes sense  given  that  intimidation  means  the  threatened  use  of physical  force--a  concept  that,  common  sense  tells  us,  involves people.    Indeed,  the  very  purpose  of  threatening  physical  force is  to  prevent  a  person  from  resisting  the  taking.    See  Rosemond, 560 S.E.2d at 641.

Doctor  also  argues  that  South  Carolina  robbery  is  not  a violent  felony  because  it  can  be  committed  without  an intentional  use  or  threat  of  physical  force.    This  position  is rooted  in  Leocal  v.  Ashcroft,  543  U.S.  1  (2004),  which considered  whether  Florida's  offense  of  driving  under  the influence of alcohol constituted a "crime of violence" under the force  clause  in  18  U.S.C.  §  16(a).    There,  the  Supreme  Court held that the ordinary meaning of "use . . . of physical force against"  a  person  "most  naturally  suggests  a  higher  degree  of intent than negligent or merely accidental conduct."  Id. at 9. Because  a  Florida  conviction  for  driving  under  the  influence could be based on negligent or accidental conduct, it lacked the level  of  intent  needed  to  be  a  crime  of  violence.    Id.  at  9-10. We  later  held  that  an  assault  conviction  premised  on  reckless

10

force was not a crime of violence for the same reason. <u>See</u> <u>Garcia v. Gonzales</u>, 455 F.3d 465, 468-69 (4th Cir. 2006).

South Carolina robbery incorporates the elements of larceny, which includes an intent to steal, <u>see</u> <u>Broom v. State</u>, 569 S.E.2d 336, 337 (S.C. 2002), but it does not contain an explicit mens rea requirement as to the force or intimidation element. Doctor takes this to mean that South Carolina robbery lacks the intent requirement needed for it to qualify as a violent felony. But he fails to cite a single case in South Carolina where a defendant negligently or recklessly used force in the commission of a robbery,[5] or where a defendant negligently or recklessly intimidated a victim. This is unsurprising because the intentional taking of property, by means of violence or intimidation sufficient to overcome a person's resistance, must entail more than accidental, negligent, or reckless conduct. In considering § 2113(a) bank robbery, the Supreme Court held that the crime requires general intent, meaning a

_____

[5] Doctor does point us to <u>United States v. Dixon</u>, in which the Ninth Circuit concluded that robbery under California Penal Code § 211 could be committed with accidental force. 805 F.3d 1193, 1197 (9th Cir. 2015). That holding, however, hinged on a stranger-than-fiction California Supreme Court case where a defendant broke into an unoccupied car in a parking garage, stole the car, and then accidentally ran over the car's owner after exiting the garage. <u>Id.</u> (discussing <u>People v. Anderson</u>, 252 P.3d 968 (Cal. 2011)). We have found no indication that a defendant can similarly commit South Carolina robbery with accidental force.

11

defendant must possess "knowledge with respect to the <u>actus reus</u> of the crime (here, the taking of property of another by force and violence or intimidation)." <u>Carter v. United States</u>, 530 U.S. 255, 268 (2000); <u>see also</u> <u>McNeal</u>, 818 F.3d at 155 (recognizing <u>Carter</u>). We see no reason why South Carolina robbery should be viewed any differently. While hypothetical scenarios can surely be concocted to support robbery convictions based on accidental, negligent, or reckless conduct, given the total absence of case law, there is not a realistic probability that South Carolina would punish such conduct.

Finally, Doctor argued for the first time at oral argument that South Carolina robbery can be committed with de minimis actual force. Several courts have found that if robbery can be accomplished with minimal actual force--grazing a victim's shoulder while lifting a purse, for instance--the crime does not meet the physical force requirement outlined in <u>Johnson I</u> ("force capable of causing physical pain or injury to another person"). <u>See, e.g.</u>, <u>United States v. Parnell</u>, 818 F.3d 974, 979 (9th Cir. 2016) (holding that Massachusetts armed robbery, which requires only "minimal, nonviolent force," does not meet the physical force threshold). We reached that result in <u>Gardner</u> with respect to North Carolina common law robbery. <u>Gardner</u>, 823 F.3d at 804. In doing so, we cited the Supreme Court of North Carolina's statement that "[a]lthough actual

12

force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property." Id. at 803 (emphasis added) (quoting State v. Sawyer, 29 S.E.2d 34, 37 (N.C. 1944)).

Here, by contrast, there is no indication that South Carolina robbery by violence can be committed with minimal actual force. As noted, South Carolina robbery can be committed "by violence or putting [a] person in fear." Rosemond, 589 S.E.2d at 758. Unlike the definition of North Carolina robbery, the definition of South Carolina robbery does not suggest that the degree of actual force used is "immaterial." There is no general statement from the South Carolina Supreme Court or intermediate appellate court to that effect. And Doctor provides no examples of South Carolina cases that find de minimis actual force sufficient to sustain a conviction for robbery by violence.[6] Therefore, there is no basis for the conclusion that South Carolina robbery can be accomplished with force below the physical force threshold. Recognizing that each

---

[6] At oral argument, defendant's counsel cited two cases for the first time--State v. Gagum, 492 S.E.2d 822 (S.C. Ct. App. 1997) and Humbert v. State, 548 S.E.2d 862 (S.C. 2001)--in support of the argument that South Carolina robbery can be committed with slight actual force. Neither case, however, addresses the minimum amount of actual force needed to sustain a robbery conviction in South Carolina. In fact, it is not clear from the face of either appellate decision whether the juries (or, more precisely, at least some of the jurors) convicted the defendants of robbery by violence or robbery by intimidation.

13

"State is entitled to define its crimes as it sees fit," McNeal, 818 F.3d at 153, South Carolina robbery differs from North Carolina robbery in this critical respect.

In sum, South Carolina has defined its common law robbery offense, whether committed by means of violence or intimidation, to necessarily include as an element the "use, attempted use, or threatened use of physical force against the person of another." Accordingly, we conclude that Doctor's prior conviction for South Carolina robbery qualifies as a predicate violent felony within the meaning of the ACCA.

### III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

WILKINSON, Circuit Judge, concurring:

I am pleased to join Chief Judge Gregory's fine opinion. It reaches the right result, and for the right reasons. The ACCA's force clause covers acts of intimidation and a strong arm robbery is the quintessential act of intimidation – whether or not actual physical force is used. This was a point we made in United States v. McNeal, 818 F.3d 141 (4th Cir. 2016). I hope that the panel opinion will mark a turning point toward a more realistic application of the categorical approach, because all too often that approach has pushed criminal sentencing to the very last place that sentencing ought to be, that is at an untenable remove from facts on the ground.

As refreshing as the panel's analysis is, I write to express a general concern that the categorical approach to predicate crimes of violence is moving beyond what the Supreme Court originally anticipated. Its overactive application is undermining the efforts of Congress, the role of district courts in sentencing, and the public's need for a sense of basic protection against the most violent forms of criminal behavior. While it need not be discarded, the categorical approach should be adapted to return to sentencing courts a greater measure of their historical discretion.

15

I.

It surprises me that we have arrived at this point, because in theory, the categorical approach makes a good deal of sense. I had high hopes for it. District courts would be spared the practical difficulties of probing the underlying conduct of predicate convictions. And the approach promised to strike a balance between exempting from sentencing enhancements defendants convicted of non-violent conduct and vindicating Congress's desire to punish the most violent recidivists. But what was fine in theory has sometimes proven to be less so in practice.

For starters, the purported administrative benefits of the categorical approach have not always worked as advertised. Judges have simply swapped factual inquiries for an endless gauntlet of abstract legal questions. Consider the decisional costs: Courts must first construe the predicate crime, which requires combing through state court decisions and "peek[ing]" at various documents to discern whether each statutory phrase is a separate element or merely an alternative means of satisfying the element. See Mathis v. United States, 136 S. Ct. 2243, 2256–57 (2016). After decoding the definition of the offense, courts must then assess whether "the minimum conduct criminalized" by the statutory elements "categorically fits" within the generic "federal offense that serves as a point of comparison."

16

Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2013). But because there is no agreed-upon metric for what constitutes a match, this inquiry also involves an exhaustive review of state law as courts search for a non-violent needle in a haystack or conjure up some hypothetical situation to demonstrate that the predicate state crime just might conceivably reach some presumably less culpable behavior outside the federal generic.

The Supreme Court has sensibly cautioned judges to use common sense in applying the categorical approach and not to indulge in imaginative flights. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). And yet the insistent injunction that we begin the inquiry with the presumption that the conviction "rested upon [nothing] more than the least of th[e] acts" criminalized, see Johnson v. United States, 559 U.S. 133, 137 (2010), virtually ensures that our legal imagination will be utilized to posit an outlier set of facts or scenarios. The upshot of this "counterintuitive" exercise, see Mathis, 136 S. Ct. at 2251, is that the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence.

The categorical approach, too aggressively applied, eviscerates Congress's attempt to enhance penalties for violent recidivist behavior. The ACCA addresses the most culpable sector of the criminal population, the repeat offenders Congress found

17

responsible for the majority of violent crimes in America. H.R. REP. NO. 98-1073, at 1-3 (1984); S. REP. NO. 98-190, at 5-6 (1983). This is no rookie class of criminals. They are the exact opposite of those first-offense or non-violent offenders who are the focus of sensible sentencing reform efforts. Doctor, for instance, has been convicted of assault and battery of a police officer, domestic violence, strong arm robbery, and a series of drug distribution offenses. This cohort of offenders are those Congress unequivocally sought to "incapacitate." H.R. REP. NO. 98-1073, at 2; S. REP. NO. 98-190, at 9. Yet the categorical approach has too often flipped this objective on its head, facilitating a regime that ostensibly seeks every possible opportunity to eschew recidivist punishment. Whatever Congress meant when it tethered the ACCA's sentencing enhancement to prior "convictions," see Taylor v. United States, 495 U.S. 575, 600 (1990), it did not pass a statute aimed at violent acts only to have patently violent acts called by some other name.

Explanations of the categorical approach repeatedly advance its sentencing windfall as a necessary consequence. It does not matter that "a sentencing judge knows (or can easily discover) that the defendant carried out [a crime of violence]." See Mathis, 136 S. Ct. at 2251. "Whether the [defendant's] actual conduct involved such facts is quite irrelevant." Moncrieffe, 133 S. Ct. at 1684. The reasons for this contention are well-

18

known and understandable, but I wonder if it is sustainable over the long term to have a criminal sentencing regime so frankly and explicitly at odds with reality.

I understand that the ACCA carries a mandatory minimum term, which already strips trial courts of a portion of their ability to craft an individualized sentence. But while one may certainly object to Congress's overuse of mandatory minimums, it does not follow that courts should double the damage by depriving sentencing judges of an additional measure of their discretion to find facts related to predicate convictions. Many of the arguments that critics legitimately level at the overuse of mandatory minimums can likewise be raised against the overuse of the categorical approach – each removes much needed discretion from the sentencing court.

The most aggressive applications of the categorical approach have operated as another exclusionary rule that limits the ability of courts to see beyond the judicial sanctuary and to fashion an informed sentence. Even when the record starkly reveals that the predicate crime was committed in a violent manner, violent predators are thrown in the hopper with all other offenders because judges generally may not consider any facts underlying the predicate offense. The alluring theoretical terminology of the categorical approach has too often served to isolate us in a judicial bubble, sealed conveniently off from

19

the real-life dangers that confront American citizens in their actual lives.

This exclusion is simply contrary to the sentencing function, which relies on district judges to consider a broad swath of information bearing on the individual defendant's "background, character, and conduct." See 18 U.S.C. § 3661 (2012). In fact, "[n]o limitation shall be placed" on the consideration of such information. Id. The Sixth Amendment need not bar a judge from finding what a previous crime involved or guilty plea determined. See Mathis, 136 S. Ct. 2258 (Kennedy, J., concurring) ("Apprendi . . . does not compel the elements based approach."). Nonetheless, with an exclusive focus on elements, we have converted traditional questions of fact into byzantine questions of law that amount almost to willful blindness to what the defendant actually did. The categorical approach thus increasingly transfers the sentencing function from the trial courts to appellate courts, a turf battle which the appellate courts may be equipped to win but at the expense of those whose ground-level view and fact-finding capacities were heretofore thought to be the heart of the sentencing function.

## II.

This should not mean jettisoning the categorical approach and its admitted advantages altogether, but rather loosening its

20

present rigid grip upon criminal sentencing. The U.S. Sentencing Commission has already begun this process: in light of complaints that the doctrine was "cumbersome and overly legalistic," it recently eliminated the categorical approach from many of the illegal reentry guidelines. See U.S. SENTENCING COMM'N, AMENDMENTS TO THE SENTENCING GUIDELINES 26 (2016). As judges, there is a way to apply the categorical approach in a realistic manner that would serve its original and laudable purposes. The categorical approach need not be the exclusive standard. District courts should be free to apply it as the default inquiry, but should retain the discretion to consider the defendant's actual conduct when it can be clearly derived from the record.

Four Justices have now expressed, albeit for varying reasons and to varying degrees, some uneasiness with aspects of the categorical approach. See Mathis, 136 S. Ct. at 2258 (Kennedy, J., concurring); id. at 2263-66 (Breyer, J., joined by Ginsburg, J., dissenting); id. at 2267-71 (Alito, J., dissenting). I recognize of course that four is not five, and we have an obligation to follow a strict elements-based inquiry so long as a majority of the Supreme Court adheres to it. The lower courts have attempted in good faith to do just that. See, e.g., United States v. Parral-Dominguez, 794 F.3d 440 (4th Cir. 2015) (North Carolina conviction for knowingly discharging a firearm

into an occupied building was not a crime of violence); United States v. Shell, 789 F.3d 335 (4th Cir. 2015) (North Carolina conviction for rape of a mentally disabled person was not a crime of violence); United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012) (California conviction for threatening to commit a crime "which will result in death or great bodily injury to another" was not a crime of violence); United States v. Hernandez-Montes, 831 F.3d 284 (5th Cir. 2016) (Florida attempted second-degree murder was not a crime of violence); United States v. Najera-Mendoza, 683 F.3d 627 (5th Cir. 2012) (Oklahoma kidnapping was not a crime of violence); United States v. McMurray, 653 F.3d 367 (6th Cir. 2011) (Tennessee aggravated assault was not a crime of violence); United States v. Jordan, 812 F.3d 1183 (8th Cir. 2016) (Arkansas conviction for aggravated assault creating a "substantial danger of death or serious physical injury" was not a crime of violence); United States v. Parnell, 818 F.3d 974 (9th Cir. 2016) (Massachusetts armed robbery was not a crime of violence); United States v. Cisneros, 826 F.3d 1190 (9th Cir. 2016) (Oregon first-degree burglary did not "categorical[ly] match" generic burglary and was not a crime of violence); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015) (Texas conviction for aggravated sexual assault of a child was not a crime of violence).

I do not intend to fault the aforementioned cases. Whether one agrees with them or not (and I often have not), they conscientiously attempted, as they should have, to apply the categorical approach correctly. And yet hidden within their binding holdings are heinous and indisputably violent acts which sentencing courts might have found if only given the opportunity. The foregoing is no more than a smattering of cases that makes no attempt to be exhaustive, but it should serve to illustrate the windfall that many criminal defendants have received from having their violent depredations on their fellow citizens obscured in what two experienced counsel have termed, perhaps too excitedly, "a morass of jurisprudential goo." See STEVEN KALAR & JODI LINKER, FED. DEFENDERS SERVS. OFFICE, GLORIOUS GOO: THE TAYLOR/SHEPARD CATEGORICAL AND MODIFIED CATEGORICAL ANALYSES 2 (2012) ("It is particularly glorious goo, because the confusion almost inevitably helps our clients."). I acknowledge that the sentencing enterprise is a matter of endless disputation and perpetual difficulty. It is hard to get right. But the heart of the endeavor has historically been the sentencing courts' fact-finding capability and guided legal discretion, and the rigid categorical approach to predicate crimes of violence has blown us far off course.

23

III.

There is a tension in the way that the Supreme Court is looking at the role of sentencing judges. One set of cases seeks to limit the fact-finding prerogative of trial courts, see Descamps 133 S. Ct. at 2283; Moncrieffe, 133 S. Ct. at 1684, while another seeks to expand it, see United States v. Booker, 543 U.S. 220 (2005) (holding the Sentencing Guidelines advisory); Gall v. United States, 552 U.S. 38 (2007) (holding district court sentencing generally reviewable under an abuse of discretion standard). Yet although the categorical approach has diminished district court discretion on predicate crimes of violence under the ACCA and other recidivist sentencing enhancements, it is much to be hoped that district judges retain a large measure of discretion outside the ACCA and similar "crimes of violence" sentencing frameworks. In other words, notwithstanding the doubt that has sometimes been thrown on the very notion of a crime of violence, does there remain a pathway for district courts to ensure that the worst behaviors are appropriately sanctioned?

I believe a pathway does exist, and it is one that fully respects, as it must, both the pronouncements of Congress and the emphatic support that Supreme Court decisions have given the superior sentencing vantage point of our trial judges. As I have noted, Congress and the Supreme Court have accorded a wide

24

degree of latitude to trial judges, both in their capacity to find facts and to fashion an individualized sentence (subject of course to statutory maximums and minimums). Congress established a comprehensive set of objectives for sentencing courts to review in each case, see 18 U.S.C. § 3553(a) (2012), and prohibited any limitation on the information a court may consider, see 18 U.S.C. § 3661 (2012). Likewise, in major sentencing decisions following Booker, the Supreme Court has envisioned a scheme in which district courts exercise broad discretion. As the Court emphasized, "[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court." Rita v. United States, 551 U.S. 338, 357-58 (2007). The trial court, therefore, is not bound by the advisory Sentencing Guidelines. Id. at 355. Rather, judges are empowered to make any number of factual determinations and conduct an "individualized assessment based on the facts presented." Gall, 552 U.S. at 50.

Do trial courts then retain significant sentencing discretion? The signals are mixed. The categorical approach is restrictive, and yet Gall is expansive. Outside the strictures of the ACCA and other recidivist enhancements that apply the categorical approach to predicate crimes of violence, a district court's fact-finding capabilities are not so constrained. While

sentencing judges are confined to a narrow set of record documents when classifying predicate crimes for a sentencing enhancement, Shepard v. United States, 544 U.S. 13 (2005), there is no corresponding "limitation on the district's court's consideration of [factual descriptions of an offense] in crafting its sentence under § 3553(a)." United States v. Savillon-Matute, 636 F.3d 119, 124 n.8 (4th Cir. 2011); see also Booker, 543 U.S. at 233 ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.").

Of course, the scope of a sentencing court's discretion to delve into the facts underlying a conviction rendered in another forum has never been boundless. Federal sentencing proceedings are not the presumptive forum – unlike habeas corpus actions - for overturning prior convictions or entertaining constitutional challenges to them. See Custis v. United States, 511 U.S. 485, 497 (1994). Yet because no comparable presumption attaches itself to the factual circumstances of prior criminal behavior – sentencing hearings are, after all, the designated vehicle for such inquiries - district courts have the option to assess the seriousness of past conduct if they so choose. Indeed, it would be the odd sentencing regime that requires a holistic view of the defendant to be sentenced, see 18 U.S.C. § 3553(a), and yet

26

prevents district courts from finding that a present or prior crime was committed in a particularly violent manner.

                              IV.

Accordingly, as the district court sets about this discretionary exercise, it has various tools to impose a stricter sentence if it believes that the categorical approach is ignoring a violent criminal history or disserving the general aims of sentencing. To be sure, the Guidelines "provide a framework or starting point" for the trial judge's sentencing determination. See Freeman v. United States, 131 S. Ct. 2685, 2692 (2011). But the Guidelines are just a starting point: sentencing judges have two options for fashioning a sentence outside the advisory range. In describing the options, I apologize for accenting the already familiar, but these discretionary tools have a renewed salience in light of the restrictions elsewhere placed upon sentencing our most violent offenders and on the sentencing judge's role. Although these alternate pathways will not repair the entire damage that I respectfully suggest a rigid categorical approach has done to congressional intent, it may allow a trial judge to reach an appropriate sentence by considering the very facts the categorical approach proscribes.

First, the Guidelines expressly provide for an upward departure if "reliable information indicates that the

defendant's criminal history category significantly underrepresents the seriousness" of the defendant's criminal history or likelihood of recidivism. U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ § 4A1.3(a)(1) (U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Cᴏᴍᴍ'ɴ 2015). Among the factors a court may consider are the factual circumstances and "nature of the prior offenses." See id. cmt. n.2(B); see also United States v. Yahnke, 395 F.3d 823, 825 (8th Cir. 2005) (concluding that the "violent nature" of a prior conviction "support[ed] a finding that [defendant's] criminal-history category substantially underrepresented the seriousness of his criminal history"). Our court, for instance, allows a district court to classify a defendant as a "de facto career offender" if the defendant's previous crimes "were sufficiently analogous to qualifying [violent felonies] that they could be considered for all intents and purposes" a violent prior offense. See United States v. Lawrence, 349 F.3d 724, 726 (4th Cir. 2003). To aid its inquiry, the sentencing judge may consult presentence reports and consider the extent to which a defendant's criminal history was violent. See United States v. Howard, 773 F.3d 519, 530 (4th Cir. 2014); Lawrence, 349 F.3d at 727–30.

Second, the district court has the discretion to impose a sentence outside the Guidelines range if it finds that the § 3553(a) factors justify a variance sentence. See Gall, 552 U.S. at 50–51. Three of those factors are the "nature and

28

circumstances of the offense and the history and characteristics of the defendant," the need to "afford adequate deterrence," and the need to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (a)(2). Here too, the sentencing court may tailor its sentence to the nature of the defendant's conduct, <u>both</u> past and present. There is no formal limit on the extent of a district judge's discretion to deviate from the Guidelines. <u>See</u> <u>Rita</u>, 551 U.S. at 355; <u>United States v. Rivera-Santana</u>, 668 F.3d 95, 106 (4th Cir. 2012). Nor is there any restriction on the trial court's ability to make factual findings and probe into the circumstances underlying previous convictions. <u>See</u> <u>United States v. Hargrove</u>, 701 F.3d 156, 164 (4th Cir. 2012); <u>United States v. Diasdado-Star</u>, 630 F.3d 359, 367 (4th Cir. 2011). In the course of this probe, one which does not implicate the modified categorical approach, the fact that a document is not <u>Shepard</u>-approved may go more to the weight of the evidence than to its admissibility. <u>See</u> U.S SENTENCING GUIDELINES MANUAL § 6A1.3(a) (U.S. SENTENCING COMM'N 2015) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Consistent with <u>Gall</u>'s appreciation that district courts are "in a superior position to find facts and judge their import," all sentencing decisions – "whether inside, just outside, or significantly outside the Guidelines range" - are entitled to "due deference" from appellate courts. <u>Gall</u>, 552 U.S. at 39, 51. While a sentencing judge's explanation for the sentence must "support the degree of the variance," a district court need not find "extraordinary circumstances" to justify a deviation from the Guidelines. <u>Id.</u> at 47, 50. Rather, irrespective of the particulars of "the individual case," a "deferential abuse-of-discretion standard of review" applies across the board. <u>Id.</u> at 52. Even when the district court calculates the Guidelines range incorrectly, appellate courts may find that the error is harmless if the evidence suggests that the sentencing judge would have varied from the Guidelines anyway and reached the exact same result. <u>See</u> <u>Hargrove</u>, 701 F.3d at 162; <u>Savillon-Matute</u>, 636 F.3d at 123-24.

In stressing the foregoing, I have once again stated only the obvious, but there are times when even the obvious needs to be said. The categorical approach might have increasingly committed the application of specified sentencing enhancements to the legal rulings of appellate courts, but that does not mean that district courts are without recourse to ensure that basic sentencing objectives are respected and achieved. In other

words, the district court may decide in the face of an inconclusive record to apply the categorical approach to predicate offenses, but it also should enjoy the discretion and the tools to craft a more individualized sentence when such would serve the ends of justice. Our standard of review under Gall remains a deferential one. I do not believe, therefore, that the Supreme Court, through its categorical approach, intended to incapacitate district courts and require those courts to stand idly by and let dangerous individuals re-enter society prematurely. Their future victims may be nameless and faceless to us, but they will bear the brunt of violent acts in intensely personal ways.